Good morning, may it please the court. My name is David Sessinger. I represent the appellant Jesus Garcia. The one issue that this appeal squarely presents is whether during the early morning hours approximately 326 a.m. on January 8th 2015, Los Angeles School police officers Danilo Osorio and Jonathan Garcia had reasonable suspicion to believe that the car that my client Mr. Garcia was riding as a passenger had unlawfully tinted a front side window in violation of California Vehicle Code 26708A. Now the facts in a nutshell are mostly uncontroverted with the exception of the the most operative one which is whether the windows were even tinted at all. At approximately 308 a.m. that morning the police officers first ran a license check, a plate check on the vehicle and determined that the car did indeed have sufficient registration and insurance. Eighteen minutes later, perhaps coincidentally, perhaps not so coincidentally, the officers were waiting at a red light at the intersection of Parkside Avenue and Mission Street in a dimly lit residential area of Los Angeles when that same vehicle traveling approximately 20 to 25 miles an hour went through the intersection. Now based on what both of the officers submitted during the evidentiary hearing to be a split-second observation, they determined that the the passenger side front side window of that vehicle was unlawfully tinted. As this court has held in United States it's not sufficient for officers merely to determine that the tint is unlawful under 26708A1 based merely on a brief non-objective basis and that's precisely what happened here. You know there was no additional corroboration regarding the tint of the window. Under 26708D the window is allowed to have some tinting. How is a police officer supposed to do what you just proposed while the car is moving 25 to 30 miles an hour? What I would submit your honor is that under some ambient circumstances it would be permissible for an officer to make an objective observation that the tint was in excess of what 26708D allows which is a minimum of 70% light transmittance. So what that means to me is you're effectively saying it's a crime only if it's in full sunlight. No it is always a crime your honor but the question is whether the the officers have a sufficient objective basis under the under the particular factual circumstances to make. The additional factual circumstance here that might be different from Caceres is that they were shining a light in the window right and couldn't see. Yeah that is correct your honor. That is an additional bit of testimony. Now however under the circumstances you know both officers had testified that you know nothing more than their training and experience allowed them to make the observation that that was an unlawful tint. Now I would submit that you know given the dimly lit neighborhood given that the vehicle was traveling at 20 to 25 miles an hour you know the upper end in that range is 25 miles per hour is 36 feet per second. So this was a very quick fleeting observation and so without additional objective indicia under those very difficult circumstances you know there simply wasn't an objective basis as this court had required in Caceres. So even though the officer Osorio did make the additional observation that the headlights were shining it hit the the window at that fleeting second and they were they were not able to see the occupants of the vehicle. They you know under these very difficult you know neighborhood ambient circumstances that simply wasn't sufficient. Getting back to Judge Donato's question under under different circumstances like in the United States v. Wallace in which the observations occurred over a long period of time during daylight hours the San Diego police officer in that case had first seen the car while the officer was parked at a gas station and then he then followed the car for for approximately a quarter of a mile pulled up alongside it in broad daylight and then made an observation that the the tinning appeared to be unlawful. That's an entirely different circumstance than what Caceres presents. What you said that there was nothing that they had in terms of their experience and looking at the transcript the officer testifies based on my training and experience it was obvious and evident the tint in the front window was very dark and extremely surpassed the amount of percentage that's allowed by the vehicle code. Now I know that they always say based on my training and experience they kind of comma before they say anything but that is the testimony and then the court accredited that testimony. So that's correct Your Honor. We're sort of in this situation where either you can you're almost suggesting that an officer could never make that judgment himself. No I think that an officer could make that judgment Your Honor under those just difficult circumstances much like in Wallace there would have to be some sort of corroboration and though even though even though Wallace. So you'd mean you have to have an expert or someone else always? It's not always required Your Honor and I would acknowledge that Wallace indicated that it's not required to have expert testimony but it did credit it as being probative and being corroborative. So I mean it in an ideal world you would have that but I'm trying to figure out can an officer ever comfortably decide to stop someone on a window tint case if we take your position? Yes Your Honor under much different circumstances if there were more lighting even even if it were at night. Okay well we talked about daylight so that's one. Or even a well-lit intersection Your Honor. So so you're saying there's no way so so it would have been okay for the windows to be tinted if they had visible light transmittance of 88%. I think that's one of the exceptions. There's another one that's highly technical in 2670AD that allows for a minimum of 70% transmittance. So they're they're two separate exceptions. And you're saying a police officer can't ever make that judgment as to which side of the line. I think I think Your Honor that as Wallace makes clear it can happen but I think the circumstances have to be quite different and if you look at this as a continuum on the one end you have Wallace in which there were been extensive percipient observations of the vehicle in broad daylight and supplemented by corroborative expert testimony and the other end of the continuum you have this case in which. I have to say I'm surprised that you think this is a matter of expert testimony I mean you know that that would not that does not require specialized knowledge to know whether a light you shine a light in the car and you can't see through the window I mean that's just percipient witness that's not expert testimony. And I would agree Your Honor except here the observation was literally as both officers testified it was it was based on a split-second observation of a car traveling at 20 to 25 miles per hour. But they also said they had they saw tint on the rear window of the car and that's never allowed right? It's the converse Your Honor on the the backside windows and the back window tint is always allowed. It's the front side windows that have this 70 and 88 percent light transmittance requirement. And did the fact that the rear taillights were misaligned have any relevance at all? It was an alternative basis that the government proffered for reasonable suspicion the district court didn't address it so if this court were to remand we acknowledge that the district court would have to address what is a well-developed evidentiary record. But if they say that what does that mean? Like it is is that we is that reasonable suspicion for a crime? Is that also unlawful to have misaligned rear taillights? Our position Your Honor and the position of the co-defendant is that is that it is not unlawful for white light to be emanating from the the red taillamp and we proffered some expert testimony from a City of Ontario police officer who said that it actually does not violate California Vehicle Code for the white light to be admitted emitting even if the taillights were misaligned. I do know... Do you want to reserve your remaining time? I would like to reserve some remaining time if there are no further questions. Thank you. Thank you. Good morning, Your Honors. May it please the court, Carolyn Small on behalf of the United States. The trial court here held a two-day evidentiary hearing on the defendant's motion to suppress and that hearing resulted in three factual findings that are key on appeal. First, the trial court determined that the officers were able to see the defendant's car windows even though it was not a white light. And that was because the officer's headlights were shining on the defendant's car as it passed through the intersection perpendicular to the officers. And then the second factual finding that the district court made was that the officers saw that that tinting on the windows was so dark that they were not able to see inside. And third, the trial court found that based on the officer's background and experience, this inability to observe the occupants inside the car indicated that that tinting was darker than it allowed. So the only issue on appeal, because the defendant says that he is not contesting those factual findings, is whether those factual findings established as a matter of law that the officers had reasonable suspicion that the defendant's car violated California's window tinting laws. How do you navigate between Caceres and Wallace? So Caceres stands for the proposition that because some amount of window tinting is allowed under California law, the mere fact that you see some tint on windows is not in and of itself sufficient to establish that there might be a California window tinting violation. Wallace says if you see some, if you are able to articulate some additional reasons why that particular window tinting was not compliant with California's regulations on window tinting, then that is reasonable suspicion to stop. And Wallace was clear about what type of additional facts an officer could articulate to establish that reasonable suspicion. In Wallace, the officer testified similarly to the officers here, which was that the tint was extremely heavy, the officer was unable to see inside the car, and that's exactly the type of testimony that we had here, and again, the district court credited that testimony. And so the only issue is whether that testimony established reasonable suspicion, and because it's identical testimony to what was in Wallace, Wallace controls. In Wallace, wasn't there an expert who gave that testimony? In Wallace, there was an expert who testified the implication of, as to the implication of the officer's testimony. So the expert testified that if the window tint was in compliance with California window tinting laws, you would expect to have a clear and unobstructed view into the windows, and therefore, the fact that the officers were unable to see into the windows indicated that there was a window tinting violation. Wallace was clear, though, that that type of expert testimony is not required, and here, the officers testified that based on their background and experience, they knew that the fact that they couldn't see into the windows, see the occupants inside the windows, even when their light was shining on the windows, meant that there was a likelihood of a California window tinting violation. And Wallace relies on a California case, Nierbauer, and in that case, the court said the officer's background and experience just includes their experience viewing vehicles and making traffic stops, and so there is not a requirement that they be scientists or, and Wallace says that they don't need to be, to testify in an expert fashion about light transmittance and how much light you would expect to go through. So although there was that expert testimony in Wallace, Wallace was clear at the same time that expert testimony of that nature was not required. And so a lot of the defendants' arguments about nighttime and the fact that the, this was just a brief observation that the officers made, those really go to the credibility of the officers, and that is something that the district court, all of, the district court considered all of those circumstances. It considered the fact that it was nighttime. It resolved conflicting testimony between the two officers about the position of their car and the way their headlights were shining, and it credited Officer Osorio's testimony that they were able to see into the windows of the car, despite the fact that it was nighttime, despite the fact that it was just a brief moment, and because the defense says that they are not challenging those findings, those, those are the facts, and the question really is just, based on those facts, was there reasonable suspicion? And that question is controlled by Wallace. And so unless the court has any additional questions, we will submit. Thank you. Thank you. We'll add some time back on the clock, given all the questions. We need a minute for rebuttal. A couple of points I'd like to make. First is that we've, as we've noted in our briefs, the district court did not actually consider testimony in its order from Ruth Padilla, the owner of the vehicle, and she had testified during the evidentiary hearing that the car had no tinting whatsoever on the front side windows. So, and both defendants testified as such as well. The district court did explicitly discredit that testimony, but it never actually considered Ruth Padilla's testimony. So unlike many of these other cases that we've discussed today and in the briefing, I know the central question of whether there was any tint whatsoever on this window is hotly disputed. Second point I'd like to make is that the government, as even the seminal case of Terry v. Ohio held, the government always has the burden of proving that there were specific articulable facts giving rise to reasonable suspicion. So, you know, our central position here is that even assuming that the facts that the government presents them as the district court found them are true, the limited testimony that Officer Sorio gave regarding her training experience and her split second observation simply isn't sufficient to sustain the government's burden under Terry and its progeny regarding reasonable suspicion. I see my time has expired. If there are no further questions, I'd be pleased to submit. Thank you very much. Thank both counsel for the argument this morning. The case just argued of United States versus Garcia.
judges: McKeown, Wardlaw, Donato